DISTRICT OF OREGON: ss,                          AFFIDAVIT OF DAVID SLAFSKY

## Affidavit in Support of a Criminal Complaint

I, David Slafsky, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.        I am a Special Agent with Homeland Security Investigations (HSI) and have been since March of 2022.  I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am authorized by law to conduct investigations and to make arrests for felony offenses.  I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon.  I was previously employed as a Special Agent with the Social Security Administration – Office of Inspector General (SSA-OIG) from October 2015 until March 2022.  Prior to my employment at SSA-OIG, I was a Special Agent with the Internal Revenue Service – Criminal Investigation (IRS-CI) division from August of 2009 until October 2015.  I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970.  I have participated in investigations alleging violations of numerous federal crimes including fraud, conspiracy, money laundering, theft and drug trafficking.  I have also acquired knowledge and information about the illegal drug trade and the various meansand methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other

**Affidavit of Special Agent David Slafsky**                                          **Page 1**

investigations.  I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA)

Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and

Organized Crime (NOC) Unit.

2.      This affidavit is based upon a joint investigation conducted by the Portland Police

Bureau (PPB) Traffic Division, PPB NOC, and Homeland Security Investigations (HSI).

## Purpose of Affidavit

3.      This affidavit is submitted to support a criminal complaint and arrest warrant for

Kevin Mauricio COLINDREZ-Gomez, a Hispanic male, date of birth xx/xx/1985 (hereinafter

referenced as "COLINDREZ") for committing the crime of Possession with Intent to Distribute

400 grams or more of a Mixture and Substance containing a Detectable amount of Fentanyl, a

Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)

and 841(b)(1)(A).

4.      I have obtained the facts set forth in this affidavit through my personal participation

in the investigation described below; from oral and written reports of other law enforcement

officers; and, from records, documents and other evidence obtained during this investigation.   I

have obtained and read official reports prepared by law enforcement officers participating in this

investigation and in other related investigations.

## Summary of Probable Cause

5.      On January 13, 2024, at approximately 1720 hours, PPB Officer Michael Abramson

was working patrol as a member of the PPB Traffic Division.  Officer Abramson was stopped at a

traffic signal located at SE Stark Street and SE 92nd Avenue in Portland, Oregon and observed that

the traffic signal was out.  At that time there was an ongoing winter storm which was causing

power outages throughout the Portland Metro area.

**Affidavit of Special Agent David Slafsky**                                        **Page 2**

6.      Officer Abramson observed a blue 2013 Hyundai Elantra travel through the intersection heading westbound on SE Stark Street at approximately 30 miles per hour without attempting to stop at the traffic signal.

7.      Officer Abramson initiated a traffic stop and contacted the driver of the vehicle, later identified as COLINDREZ, who stated he did not have a driver's license or identification card and identified himself as Alexis Gomez.  Officer Abramson was unable to identify the driver based on the information provided, so he returned to the vehicle and asked the driver to confirm his name.  The driver then told Officer Abramson his name was Luis Gonzales, and separately told PPB Officer Scott, who had arrived as a cover officer for Officer Abramson, his last name was Gonzales-Cruz.

8.      After being unable to identify the driver with the information he was providing, Officer Abramson requested assistance with a mobile fingerprinting device and Officer Pavon responded to the scene.  The driver then told Officer Pavon his name was Luis Rodriguez, however, Officer Pavon was able to positively identify the driver as COLINDREZ using his fingerprints, and observed that he had an outstanding felony arrest warrant.

9.      COLINDREZ was arrested by Officers Pavon and Scott due to the warrant, and Officer Abramson requested the vehicle be towed from the scene since COLINDREZ did not have a driver's license or insurance.  Following PPB policy, Officer Abramson conducted an inventory search of the vehicle prior to it being towed.  During that search, Officer Abramson located a scale with powder residue on it, a large quantity of what he believed to be powdered fentanyl, and a large quantity of U.S. currency.

10.     COLINDREZ was transported to the PPB East Precinct, as were the suspected fentanyl and US currency.  At PPB East Precinct, Officer Abramson completed a test of the

**Affidavit of Special Agent David Slafsky**                                                    **Page 3**

suspected fentanyl using a Mobile Detect kit and the powder tested presumptively positive for the presence of fentanyl. In total, the powdered fentanyl weighed approximately 407.7 grams, and was individually packaged into multiple baggies each weighing approximately 28 grams (one ounce) per package. A photograph of the powdered fentanyl is depicted below:



11.    PPB Officers also counted the U.S. currency which had been located in the vehicle with COLINDREZ and found that it was approximately $12,450.00.

12.    I know that drug traffickers are increasingly selling both counterfeit M30 prescription pills that are manufactured with fentanyl and loose powder fentanyl, a Schedule II controlled substance. These counterfeit pills are designed to replicate real 30 mg Oxycodone pills, which are round, often blue in color, and stamped with an "M" and "30" on them and weigh approximately 1/10th of a gram. I have seen and been involved in the seizure of tens of thousands of these counterfeit M30 pills and both field tests and forensic laboratory analysis conducted on

samples of these pills have confirmed the presence of fentanyl within them. I know a typical user

of fentanyl will either buy powdered fentanyl or counterfeit M30 pills that they will then burn it on

a piece of tin foil and inhale the fumes. Sometimes a user will simply ingest the pills or inhale the

powdered fentanyl. These M30 pills can sell on the street to a user for as little as .50 cents to $1 a

pill. Depending on their level of addiction, I know that a typical fentanyl user buying pills may

buy and use between one (1) and 20 pills a day, and sometimes more. I know that a user of

powdered fentanyl will use it in quantities of less than 1/10 of a gram. I also know that dealers of

pills will often buy pills in bulk quantities and then repackage the pills into smaller quantities. I

know that dealers of powdered fentanyl will often buy fentanyl in larger quantities and then break

off and sell it in smaller qualities of a gram or less. I know that a person possessing over five to 10

grams of fentanyl powder does not possess the powder for personal use but rather such a quantity

indicates that it is possessed for purposes of further distribution.

    13.    Due to the large quantity of powdered fentanyl and US Currency located in the

vehicle, Officer Abramson contacted members of PPB NOC who responded to PPB East Precinct.

PPB Officer Castaneda interviewed COLINDREZ in the Spanish language after advising him of

his *Miranda* rights in the Spanish language. COLINDREZ acknowledged his *Miranda* rights and

agreed to answer questions. During the course of the interview, COLINDREZ stated the

following:

- •    COLINDREZ gave PPB Officers a fictitious name because he knew he had an
    outstanding arrest warrant.

- •    COLINDREZ knew PPB Officers had found powdered fentanyl in his car and
    stated he was responsible for it because it had been fronted to him so he could sell

it.  COLINDREZ said there was 9 ounces (approximately 255 grams) of powdered

fentanyl in the vehicle packaged in 9 one-ounce bags.

• COLINDREZ was returning the fentanyl to his boss, who he sells fentanyl for,

because his customers were complaining that it was too weak.

• COLINDREZ confirmed there was about $13,000.00 in US currency in the vehicle

and stated he was also returning it to the individual he sells fentanyl for.

COLINDREZ stated he had received all of the cash from selling fentanyl.

COLINDREZ said he sells fentanyl for about $40 or $50 per gram.

• COLINDREZ said he originally received 18 ounces of fentanyl, sold 9 ounces to

receive the approximately $13,000.00 in US currency and still had the other 9

ounces, which he was returning.

### Conclusion

14.    Based on the foregoing, I have probable cause to believe, and I do believe, that

Kevin Mauricio COLINDREZ-Gomez has committed the crime of Possession with Intent to

Distribute 400 grams or more of a Mixture and Substance containing a Detectable amount of

Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section

841(a)(1) and 841(b)(1)(A).  I therefore request that the Court issue criminal complaints and arrest

warrant for COLINDREZ.

///

///

///

15.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin.  AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
David Slafsky Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at __11:54 am__ on January___15___, 2024.

*Youlee Yim You*
_____
HONORABLE YOULEE YIM YOU
UNITED STATES MAGISTRATE JUDGE